**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV and WILLIAM SULLIVAN, | Case No. |
| Plaintiffs, | |
| v. | |
| FIRST AMERICAN FINANCIAL CORPORATION, RICHARD ROES 1-10, *fictitious names of unknown individuals*, and ABC COMPANIES 1-10, *fictitious names of unknown entities*, | |
| Defendants. | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453, Defendant First American Financial Corporation ("First American" or "Defendant"), hereby files this Notice of Removal in support of the removal of this action from the Superior Court of New Jersey, Middlesex County, Docket No. L-915-24, to this Court, the United States District Court for the District of New Jersey. In support of this Notice of Removal, First American states as follows:

## D.N.J LOCAL RULE 10.1 STATEMENT

The plaintiffs in this action that are natural persons are Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan and William Sullivan (collectively,

the "Individual Plaintiffs"). The Individual Plaintiffs did not disclose their street addresses in the Complaint, and Defendants are not otherwise aware of their addresses.

Plaintiff Atlas Data Privacy Corporation ("Atlas") is a Delaware corporation. According to the Complaint, it is located at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

The Individual Plaintiffs and Atlas (collectively, "Plaintiffs") are represented by Rajiv D. Parikh and Kathleen Barnett Einhorn of GENOVA BURNS LLC, 494 Broad Street, Newark, NJ 07012, and John A. Yanchunis of MORGAN & MORGAN COMPLEX LITIGATION GROUP, 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

Defendant First American is a Delaware corporation. It is located at 1 First American Way, Santa Ana, California 92707. First American is represented by John Papianou and Alexandra Jacobs of Montgomery, McCracken, Walker & Rhoads LLP, 457 Haddonfield Road, Suite 600, Cherry Hill, NJ 08002.  In addition, counsel from Hudson Cook, LLP, intend to submit motions to appear *pro hac vice.*

The remaining defendants, Richard Roes 1-10 and ABC Companies 1-10, are fictitious names of unknown natural persons and entities. Defendants are not aware of the street and post office addresses of Richard Roes 1-10 or the principal places of business of ABC Companies 1-10.

**D.N.J. Local Rule 11.2 Statement**

Pursuant to Local Rule 11.2, the undersigned counsel, on behalf of First American, certifies that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

**NATURE OF THE CASE**

1.      On or about February 9, 2024, Plaintiffs commenced this action against First American in the Superior Court of New Jersey, Law Division, Middlesex County (the "Superior Court"), entitled *Atlas Data Privacy Corporation, et al. v. First American Financial Corporation, et al.*, Docket No. MID-L-000915-24 (the "Action").

2.      Although Plaintiffs' Complaint was not properly served on First American in accordance with the New Jersey Rules of Procedure, First American accepted service on March 20, 2024. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of all the state court process filings, pleadings, and orders, are attached hereto as Exhibit A.

3.      In Count I of the Complaint, Plaintiffs assert claims against First American for violations of New Jersey's Daniel's Law, N.J.S.A. 47:1A-1, *et seq*., and N.J.S.A. 56:8-166.1 (hereinafter "Daniel's Law"). *See* Compl., Ex. A, ¶¶ 57–63. More specifically, Plaintiffs claim Defendants have failed to cease making available the home addresses or unpublished home telephone numbers of covered persons upon request pursuant to the statute. *Id*.

4.      In addition to the claims asserted by the Individual Plaintiffs, Atlas purports to assert claims on behalf of 19,517 unidentified individuals "who are all 'covered persons' under Daniel's Law (together, the 'Covered Persons'), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors." *Id*. at ¶ 26.

5.      Plaintiffs seek to recover actual damages of not less than $1,000 for each violation, punitive damages, reasonable attorneys' fees, judgment interest and litigation costs. *See id*. at p. 23.

6.      Plaintiffs also allege that they are entitled to "injunctive relief" with respect to the "protected information" of each "Individual Plaintiff" and each unnamed "Covered Person." *Id*.

7.      As demonstrated below, the case is properly removable pursuant to 28 U.S.C. §§ 1332 and 1441(a) because complete diversity of citizenship exists between the Individual Plaintiffs and Defendant and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Further, even if the Court found that diversity jurisdiction did not exist, removal is proper under the Class Action Fairness Act ("CAFA") in accordance with 28 U.S.C. § 1332(d). *See also* 28 U.S.C. § 1453.

**GROUNDS FOR REMOVAL**

8.      A defendant seeking to remove a case to federal court must file in that court a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). "By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure." *Dart*, 574 U.S. at 87. "No evidentiary support is required, and the Court should accept a defendant's allegations unless they are contested by the plaintiff or questioned by the Court." *Farrell v. FedEx Ground Package Sys., Inc.*, 478 F. Supp. 3d 536, 540 (D.N.J. 2020) *citing Dart,* 574 U.S. at 84.

9.      This Action is a civil action within the meaning of 28 U.S.C. § 1441.

10.      Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely because it was filed with this Court within thirty (30) days of the named Defendant's receipt "through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based," which occurred on March 20, 2024.

11.      This filing of the Notice of Removal in this Court is appropriate because the District of New Jersey is the federal district where the state court action is pending. 28 U.S.C. §§ 1441(a) and 1446(a).

12.     Defendant has not answered or otherwise filed a responsive pleading. 28 U.S.C. § 1446(a).

## I.    DIVERSITY JURISDICTION

13.     Under 28 U.S.C. § 1332, a district court shall have original jurisdiction over a civil action when the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000), exclusive of interest and costs, and is between citizens of different States. As a result, this Action could have originally been filed in this Court and could be properly removed to this Court. *See* 28 U.S.C. § 1441.

14.     Removal is proper under 28 U.S.C. §§ 1332 and 1441(a) because complete diversity of citizenship exists between Plaintiffs and Defendant and the amount in controversy exceeds $75,000, exclusive of interest and costs.

### A.    There is Complete Diversity of Citizenship Between Plaintiffs and First American.

15.     For diversity jurisdiction to exist, there must be "complete" diversity, meaning that all plaintiffs must be of different citizenship than all defendants. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015).

16.     For purposes of determining diversity, a corporation is deemed to be a citizen of (1) any state where it is incorporated and (2) the state in which it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1).

17.     The Individual Plaintiffs are citizens of New Jersey. The Complaint alleges that Jane Doe-1 and Jane Done-2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev and William Sullivan are police officers living and working in New Jersey. *See* Compl., ¶ 15-24. In fact, as a matter of New Jersey law, "[e]very member of a police

department and force shall be a resident of the State of New Jersey while serving in such position." N.J.S.A. 40A:14-122.8.

18.     Plaintiff Atlas is a Delaware corporation with its principal place of business in New Jersey. Compl. ¶ 25. Atlas's citizenship, however, is immaterial to the diversity of citizenship analysis because Atlas is merely a purported assignee of claims by approximately 19,757 New Jersey citizens. *See* Compl. ¶¶ 26-27; 13F Fed. Prac. & Proc. Juris. § 3641, 3 (3d ed.) ("[A] number of federal courts have refused to ignore the possibility that a plaintiff may have engaged in a collusive attempt to manipulate the forum for a particular lawsuit and have retained removed cases on the basis of diversity jurisdiction after they have inquired into the validity of a state law transaction.").

19.     In *Kramer v. Caribbean Mills, Inc*., the Supreme Court held that assignments, even ones permissible under state law, can be disregarded for diversity purposes where "improperly or collusively" made for purposes of manipulating diversity jurisdiction. 394 U.S. 823, 825 (1969). The Supreme Court has since made pronouncements that the "diversity jurisdiction statute [requires] courts in certain contexts to look behind the pleadings to ensure that parties are not improperly creating or destroying diversity jurisdiction." *Mississippi ex rel. Hood v. AU Optronics Corp*., 571 U.S. 161, 174 (2014).

20.     As a result, federal courts across the United States have taken the position that assignments cannot be used to destroy or create diversity jurisdiction. *See Attorneys Trust v. Videotape Computer Products, Incorporated*, 93 F.3d 593, 597 (9th Cir. 1996) (holding that courts are "sensitive to and concerned by manipulations of their jurisdiction with partial assignments which lack reality and amount to no change in the identity of the party with the real interest in the outcome of the case"); *Grassi v. Ciba-Geigy, Limited*, 894 F.2d 181, 185 (5th Cir. 1990); *Slater v.*

6

*Republic- Vanguard Ins. Co.*, 650 F.3d 1132, 1135 (8th Cir. 2011) ("In many cases considering whether a partial assignment created or destroyed diversity jurisdiction, federal courts have disregarded assigned or retained interests that were more substantial than the $100 interest retained by LCI."); *Carter v. Seaboard Coast Line R. Co.*, 318 F. Supp. 368, 372 (D.S.C. 1970) ("It is accordingly, the right of this Court, when the issue of federal jurisdiction is raised, to inquire into the purpose and character of an assignment, which either creates or defeats federal jurisdiction.").

21.     Thus, from the face of the pleadings and based on the applicable legal standard, this Court should disregard Atlas for the purposes of assessing diversity jurisdiction.

22.     Defendant First American is a Delaware corporation with its principal place of business in California.

23.     Richard Roes 1-10 and ABC Companies 1-10 are wholly fictitious and should be disregarded for purposes of removal. *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 37 (3d Cir. 1985) ("In determining whether diversity jurisdiction exists, the citizenship of purely 'nominal' parties may be disregarded.")

24.     In accordance with 28 U.S.C. § 1332(a)(2), complete diversity of citizenship exists because the Individual Plaintiffs are citizens of New Jersey and Defendant is not a citizen of New Jersey. Furthermore, this action is removable because Defendant is not a citizen of the state in which this Action was commenced. *See* 28 U.S.C. § 1441(b)(2).

25.     To the extent the Court believes that more evidence is needed to disregard the Individual Plaintiffs' assignments to Atlas in the Court's analysis of citizenship, it should—at a minimum—order jurisdictional discovery of Atlas and the nature of the assignments. *See Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co.*, 794 F. Supp. 2d 265, 268 (D. Mass. 2011) (permitting limited jurisdictional discovery into assignments alleged to be collusive in

nature); *Hagenbaugh v. Nissan N.A.*, 2022 WL 676277, at *4 (M.D. Pa. Mar. 7, 2022) (allowing a removing defendant to take jurisdictional discovery because the plaintiff challenged allegations in the notice of removal); *see also Fabricant v. Intamin Amusement Rides Int. Corp. Est*, 2019 WL 3315496, at *3 (D.N.J. July 24, 2019).

       **B.**      **The Amount-in-Controversy Requirement is Clearly Satisfied.**

26.     The second requirement to establish diversity of citizenship jurisdiction is that the amount in controversy must exceed $75,000. *See* 28 U.S.C. § 1332(a). When "the plaintiff's complaint does not include a specific monetary demand, the removing defendant need only 'plausibl[y] alleg[e]' the amount in controversy." *Yucis v. Sears Outlet Stores, LLC*, 813 Fed. App'x 780, 782 n.2 (3rd Cir. 2020) (*quoting Dart Cherokee*, 574 U.S. at 89).

27.     A single plaintiff can satisfy this requirement and this Court can then exercise supplemental jurisdiction over any other plaintiffs, regardless of the value of their claims. *Burgess v. Bennet*, 2021 WL 1050313, at *5, n. 9, (D.N.J. Mar. 19, 2021).

28.     In their Complaint, Plaintiffs request "actual damages, not less than liquidated damages under Daniel's Law, at $1,000 for each violation." Compl., at p. 23. Thus, assuming each Covered Person that Atlas purports to represent asserts only one violation of Daniel's Law, the amount in controversy or actual damages alone would exceed $19,757,000.

29.     In addition to actual and statutory damages, each Plaintiff seeks punitive damages, attorneys' fees and injunctive relief.

30.     Although First American denies that Plaintiffs have adequately pled or could establish any violation of the law or corresponding damages, punitive damages that are made in good faith "will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum." *Huber v. Taylor*, 532 F.3d 237, 244 (3rd Cir. 2008) *quoting Golden ex rel. Golden v. Golden*, 382

F.3d 348, 355 (3rd Cir. 2004). The Third Circuit has also held that in "calculating the amount in controversy, we must consider potential attorney's fees. Although 28 U.S.C. § 1332 excludes 'interest and costs' from the amount in controversy, attorney's fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action." *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3rd Cir. 1997) (citation omitted).

31. Given this precedence and the relief Plaintiffs seek in the Complaint, there can be no doubt that this Action meets the amount-in-controversy requirement.

32. Accordingly, because the parties are completely diverse and the amount in controversy exceeds $75,000, the requirements of diversity jurisdiction are satisfied and removal to this Court is appropriate.

## II. CAFA JURISDICTION

33. This Court also has jurisdiction over this Action pursuant to CAFA. "CAFA confers on district courts 'original jurisdiction of any civil action' in which three requirements are met: (1) an amount in controversy that exceeds $5,000,000, as aggregated across all individual claims; (2) minimally diverse parties; and (3) that the class consist of at least 100 or more members…." *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) (quoting 28 U.S.C. § 1332(d)(2), (5)(B), (6)). In addition, to be considered a "class action" under CAFA, the suit must be "filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action[.]" 28 U.S.C. § 1332(d)(1)(B).

34. This Action satisfies all of CAFA's requirements for federal jurisdiction over a class action because (1) there is minimal diversity between the parties; (2) the aggregate amount in controversy exceeds $19,757,000; (3) the putative class is approximately 19,757 members; and (4) the suit was filed under a state-law analogue to Rule 23.

9

35.     Further, removal is appropriate in this case because it can also be considered a "mass action" under CAFA.

**A.     This Action Satisfies CAFA's Requirements for Federal Jurisdiction.**

36.     As noted in more detail above, minimal diversity is met because the citizenship of the Individual Plaintiffs is different from that of First American. While the Individual Plaintiffs are citizens of New Jersey, First American is a citizen of Delaware and California.

37.     The amount-in-controversy requirement is also met by aggregating the liquidated damages under Daniel's Law of $1,000 per violation for 19,757 individuals, which totals at least $19,757,000. This amount does not include the punitive damages, attorneys' fees and injunctive relief that Plaintiffs also seek.

38.      The numerosity requirement is also met. "[T]he Third Circuit found that partial assignees can be counted as class members when evaluating whether a class meets Rule 23's numerosity requirement." *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop*., 2020 WL 5211035, at *10 (E.D. Pa. Sept. 1, 2020), *citing, In re Modafinil Antitrust Litigation*, 837 F.3d 238, 251-52 (3d Cir. 2016). Here, Plaintiffs allege that, in addition to the eight Individual Plaintiffs, 19,757 individuals have, at least partially, assigned Atlas their claims. Therefore, the number of proposed class members easily exceeds the 100 members necessary to satisfy the numerosity requirement for purposes of CAFA jurisdiction.

39.     Although CAFA requires that the case be filed under a state law analogue of Rule 23, the analogous state law need not be pled in the complaint to satisfy CAFA. That is because "a plaintiff could avoid federal jurisdiction for a lawsuit that resembles a class action in all respects simply by omitting from the complaint the name of the rule or statute under which she proceeds." *Williams v. Employers Mutual Casualty Company*, 845 F.3d 891, 901 (8th Cir. 2017); *see also Badeaux v. Goodell*, 358 F. Supp. 3d 562, 567 (E.D. La. 2019) ("A lawsuit resembling a class

action will not escape CAFA jurisdiction simply because it omits the words 'class action' or does not include the state rule or statute under which it proceeds as a class action."). Accordingly, "[i]f a complaint does not satisfy CAFA's jurisdictional requirements on its face, [courts] must cut through any pleading artifice to identify whether the case is in substance an interstate class action." *Erie Ins. Exchange v. Erie Indemnity Co.*, 68 F.4th 815, 819 (3d Cir. 2023).

40.     Here, Plaintiffs' decision not to cite to an analogous state law in the Complaint does not hide the true nature of this Action. Atlas alleges that it represents 19,757 individuals with claims that are like those of the Individual Plaintiffs. Absent some kind of joinder, there is no other way to litigate this case than to consider it a class or mass action.

41.     Therefore, all the requirements for CAFA jurisdiction of a class action have been met.

**B.     This Action Could Also be Considered a Mass Action Under CAFA.**

42.     Federal jurisdiction exists under CAFA for a mass action that satisfies: (1) the class action requirements of (a) minimal diversity and (b) the $5,000,000 aggregate amount-in-controversy; (2) numerosity for a mass action; and (3) the $75,000 individual amount-in-controversy requirement. 28 U.S.C. § 1332(d)(11)(B).

43.     All of these elements, including the $75,000 individual amount-in-controversy requirement are met in accordance with the discussion above. The Court may, therefore, also find that it has jurisdiction in this Action as a mass action pursuant to CAFA.

**III.    REQUIREMENTS OF 28 U.S.C. § 1466**

44.     Pursuant to 28 U.S.C. § 1446(d), upon filing of this Notice of Removal, First American will give written notice of this Notice to Plaintiffs and the Clerk of the Superior Court of New Jersey, Law Division, Middlesex County.

## PRESERVATION OF RIGHTS AND DEFENSES

45.     By removing this action from the Superior Court of New Jersey, Law Division, Middlesex County, First American does not waive any defenses available to it.

46.     Further, First American does not admit to any allegation in the Complaint by removing this Action to this Court.

47.     First American reserves the right to amend or supplement this Notice of Removal.

WHEREFORE, First American removes this Action to this Court for further proceedings according to the law.

Dated:  April 19, 2024                    Respectfully submitted,

**Montgomery McCracken Walker & Rhoads LLP**

By:   /s/ *Alexandra S. Jacobs*
        Alexandra Jacobs
        John Papianou
        457 Haddonfield Road, Suite 600
        Cherry Hill, NJ 08002
        856.488.7746
        ajacobs@mmwr.com
        jpapianou@mmwr.com

        HUDSON COOK LLP
        Rebecca E. Kuehn (pro hac vice forthcoming)
        Robert D. Tilley (pro hac vice forthcoming)
        Jason F. Esteves (pro hac vice forthcoming)
        1909 K Street, NW, 4th Floor
        Washington, DC 20006
        202.327.9710 / 202.327.9711
        rkuehn@hudco.com
        rtilley@hudco.com
        jesteves@hudco.com

        *Attorneys for Defendant, First American Financial Corporation*

# EXHIBIT A

**GENOVA BURNS LLC**
Rajiv D. Parikh (032462005)
Kathleen Barnett Einhorn (040161992)
494 Broad Street
Newark, New Jersey 07102
Tel.: (973) 533-0777
rparikh@genovaburns.com
keinhorn@genovaburns.com

**MORGAN & MORGAN**
John A. Yanchunis (*pro hac vice* to be filed)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com

*Attorneys for Plaintiffs Atlas Data Privacy
Corporation, Jane Doe-1, a law
enforcement officer, Jane Doe-2, a law
enforcement officer, Edwin Maldonado,
Scott Maloney, Justyna Maloney, Patrick
Colligan, Peter Andreyev, and William
Sullivan*

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN, <br><br> Plaintiffs, <br> v. <br><br> FIRST AMERICAN FINANCIAL CORPORATION, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION, MIDDLESEX COUNTY DOCKET NO.: MID-L-_____-24 <br><br> <u>**CIVIL ACTION**</u> <br><br><br> **COMPLAINT** |

Plaintiffs Atlas Data Privacy Corporation ("Atlas") as the assignee of individuals who are

Covered Persons under Daniel's Law along with Jane Doe-1 (a law enforcement officer), Jane

Doe-2 (a law enforcement officer), Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick

Colligan, Peter Andreyev, and William Sullivan (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby submit this Complaint against Defendants and state as follows:

## **INTRODUCTION**

1.      In these tumultuous times, it is critical that the most sensitive personal information of those who serve the public be protected from unwarranted disclosure.  As set forth below, Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement officers, and prosecutors – and their families – with the right to prevent the disclosure of their home addresses and unpublished home telephone numbers, and to enforce those rights against uncooperative profit-seeking data brokers.

2.      This complaint seeks to protect those important rights, against companies brokering data and choosing profit and personal gain over a critical public interest and the unequivocal mandate of the law.  Companies in the business of disclosing this protected information have avoided accountability for far too long, proffering such information, including home addresses and unpublished home telephone numbers, without sufficient regard for the risks and consequences imposed upon individuals who serve critical judicial and law enforcement roles.

3.      The Legislature and Governor unanimously agree that the basic safety of those who serve – and their families – must be assured.  Here, not only do the data brokers wantonly and repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of those who serve.  Our judges, law enforcement officers and prosecutors should receive the full measure of protection afforded to them under the same laws they enforce for the safety of all citizens.

4.      With this action, Plaintiffs seek to enforce the important rights granted to judges, law enforcement officers, and prosecutors under Daniel's Law.  Consistent with the statutory provisions, Atlas brings this action as an assignee for certain individuals, including many family

2

members of law enforcement officers and prosecutors.  Plaintiffs seek all available injunctive relief and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

## **BACKGROUND**

### **Passage of Daniel's Law in New Jersey**

5.     In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was shot dead by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just age 20 and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect his parents.  By the time his mother, a Judge, came to the door to check on what happened, the killer was gone.  But her husband was critically wounded, and Daniel tragically died from the gunshot.

6.     During the investigation, the perpetrator was found to have certain political and personal grievances against the Judge, and went to their home that day intending to kill her. Instead, he murdered the Judge's son and almost succeeded in killing her husband as well. Investigators eventually connected this attack with another shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman.  Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to what was pending before Daniel's mother.

7.     Critically, the gunman was able to find the home addresses of both of his murder victims through the various people finder resources available on the internet,[1] the same kind of data broker services at issue in this case.

---

[1] https://www.cbsnews.com/news/esther-salas-son-murder-roy-den-hollander-48-hours/.

**New Jersey Passes Daniel's Law in 2020**

8.      In response to the shooting of Daniel, New Jersey enacted Daniel's Law within a few months, in November 2020 (P.L. 2020, c. 125 *codified in* <u>N.J.S.A.</u> 47:1A-1, et seq. and <u>N.J.S.A</u> 56:8-166.1), which prohibits online data brokers from selling, publishing, and distributing the name and address of current and former judges, law enforcement officers, and prosecutors and their eligible family members (i.e., "covered persons"), upon any written request by the covered person.  Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of Judges and prosecutors.

9.      Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers.  Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."  Data brokers must cease disclosure of this protected information within 10 business days of receiving a nondisclosure request from a covered person.

**Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022**

10.      Similar to the actions taken by the State of New Jersey, federal judges such as U.S. Supreme Court Chief Justice John G. Roberts Jr. proposed and supported a federal version of Daniel's Law.  The Chief Justice was quoted stating, "[t]he law requires every judge to swear an

4

oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety … [a] judicial system cannot and should not live in fear."[2]

11.     The federal bill, which had broad bipartisan support in both the House and Senate, protected judges' personally identifiable information from resale by data brokers.  It allowed federal judges to redact their personal information displayed on federal government internet sites.

12.     The U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached,[3] and it was signed by President Biden.[4]

**Violence Against Police Officers and Judges Has Not Stopped**

13.     Judges, law enforcement officers, and prosecutors put their lives on the line every day, which is clearly exhibited by numerous horrific stories of violence beyond the story of the murder of Daniel Anderl.  For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers and their 10-day old infant.  That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.[5]

14.     More recently, another perpetrator hunted and killed in cold blood a Maryland Judge, after a child custody ruling.[6]  The killing followed that of a Wisconsin Judge in 2022, where the perpetrator killed the retired Judge out of spite for his handling of a criminal case in 2005.[7]

---

[2] https://www.washingtonpost.com/politics/2022/12/31/supreme-court-roberts-leak-report/.
[3] https://www.uscourts.gov/news/2022/12/16/congress-passes-daniel-anderl-judicial-security-and-privacy-act.
[4] https://www.nj.com/politics/2022/12/biden-signs-defense-policy-bill-that-remembers-3-new-jerseyans.html.
[5] Shooters Open Fire On Home Of New Jersey Police Officers In 'Targeted Attack,' Chief Says (forbes.com).
[6] Judge Andrew Wilkinson: Suspect still on the run after killing a judge at his home in a 'targeted attack' following a child custody ruling, sheriff says | CNN.
[7] Former Judge John Roemer was killed in his Wisconsin home in a targeted attack, officials say | CNN.

## THE PARTIES

### The Individual Plaintiffs

15.     Plaintiff JANE DOE-1, whose name has been anonymized for safety reasons, is a decorated veteran police officer working in Northern New Jersey.  Between 2021 and 2022, Officer Doe-1 participated in a task force that targeted a major criminal organization operating in the state.  Her efforts ultimately led to the arrest and prosecution of a member of the organization's leadership, an individual with an extensive criminal history including threats of violence.  In the subsequent investigation, digital devices recovered from the organization's leadership were analyzed and photographs of Officer Doe-1's personal residence were identified.  Officer Doe-1 lives in the home with her spouse and their young child.  Evidence recovered in the investigation included night-time photography of the young child's bedroom and playroom windows, with the light on while the child was playing inside.  Further investigation revealed that the criminal organization's leadership had hired a private investigator who searched online data broker websites to obtain the officer's home address.  Having identified her home address, text messages confirmed that they had initiated surveillance and were tracking Officer Doe-1's movements to and from her home, immediately prior to the task force initiating arrests.

16.     Plaintiff JANE DOE-2, whose name has been anonymized for safety reasons, is a veteran correctional police officer who lives in Northern New Jersey with her husband and two young children.  Earlier in her career, Officer Doe-2 was the subject of a death threat from a hostile inmate.  The inmate stated that they intended to kill Officer Doe-2, and further implied that they would rely upon a particular private investigator to track down Officer Doe-2's home address to facilitate the murder.  This death threat was investigated and considered credible enough to result in a successful criminal prosecution.  Part of Officer Doe-2's current duties include working in her

correctional facility's law library, where inmates have access to the Internet including online data broker websites and services. Recently Officer Doe-2 and her coworkers discovered a note left behind by an inmate which included the full name and home address of a young female member of the jail's administrative staff. The most effective ways to safeguard the security and privacy of their home addresses - for their own safety and that of their family members - is a frequent topic of discussion and concern among the correctional police officers working at Officer Doe-2's facility.

17.     Plaintiff Officer EDWIN MALDONADO joined the Plainfield, New Jersey police department as a patrol officer in 2000. After a few months on the job, he was assigned to street crimes, where he excelled at field work. In 2005, he became a Detective with Plainfield's major crimes unit and joined a Federal task force targeting the Mara Salvatrucha-13 (MS-13) gang in New Jersey. He worked with the task force for the next two years. During that time period, he received multiple credible death threats from MS-13 members. Detective Maldonado did not believe he would be able to safeguard his home address while living in Plainfield and relocated his family to a remote location from which he commuted to work. In 2009, because his relocation effort had been successful and MS-13 could not locate his new home address, gang members targeted Detective Maldonado's mother instead. They intended to burn down her building with her inside, but set fire to an adjacent building by mistake. Phone calls between MS-13 members discussing the premeditated murder of Detective Maldonado and his family, and the premeditated murder of Detective Maldonado's mother, were intercepted by jail wiretaps. Later in multiple criminal trials, evidence was entered into the record regarding these intercepted conversations and premeditated murders, contributing to numerous successful prosecutions.

7

18.     Plaintiffs Sergeant SCOTT MALONEY ("Sergeant Maloney") and Officer JUSTYNA MALONEY ("Officer Maloney") are husband and wife, both veteran police officers currently serving with the Rahway, New Jersey Police Department.  They live together in New Jersey with their two young children.  In April of 2023, Officer Maloney responded to a routine call of a suspicious individual outside the Motor Vehicle Commission in Rahway.  The individual was an online content creator who often solicits police contact and then films himself debating constitutional rights with the responding officers.  A subset of the content creator's audience is vocally anti-police and videos posted to his social media channel have historically been the source of harassment and intimidation campaigns directed at the officers involved.  In this case, Officer Maloney and several other responding officers were filmed discussing a number of legal issues with the content creator, including whether or not the content creator was required to take his hands out of his pockets to show that he was unarmed.  Overall, the encounter was routine and ended uneventfully.

19.     The resulting video footage was selectively edited and posted to YouTube.  Almost immediately upon the video being posted, Officer Maloney was targeted by followers of the channel and other individuals who viewed the video.  Sergeant Maloney was quickly identified by viewers as Officer Maloney's husband, and became a target himself, due to their relationship as a married couple and his own status as a police officer.  Web links to data broker websites publicly disclosing the Maloney family's home address and unpublished home telephone numbers were posted along with explicit death threats and calls for violence, resulting in dozens of threatening phone calls and text messages.

20.     One of the text messages sent to Sergeant Maloney demanded money and stated that if Sergeant Maloney did not comply then his family would "pay in blood."  The unknown

messenger went on to state that they knew where the Maloneys lived and sent the full name and home address of one of the Maloneys' nearby relatives as proof of the messenger's ability to gather sensitive personal information. Sergeant Maloney refused to comply with any demands. He then received a video of three individuals in ski masks armed with handguns and assault rifles repeating the extortion demand. In part of the video, a masked individual points a rifle at the camera and tells Sergeant Maloney that his family is "going to get [their] heads cut off."

21.     Several weeks later, one of the Maloneys' neighbors observed two suspicious looking individuals in ski masks parked one block away from the home and alerted police. Responding officers arrested two men - who were armed - for unlawful possession of a firearm. Video surveillance captured by nearby houses shows the two men circling the Maloneys' house immediately prior to their arrest. Officer Maloney and her two young children were at home at the time.

22.     Plaintiff Detective PATRICK COLLIGAN is a 32-year veteran of the Franklin Township police department in Somerset, New Jersey. Since 2014, Detective Colligan has served as the President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state. During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. The seriousness of certain threats necessitated the installation of a surveillance camera system and alarm system, and training for his spouse and children about how to respond in the event of an attack on their home.

23.     Plaintiff Officer PETER ANDREYEV is a 32-year veteran of the Point Pleasant, New Jersey police department. Officer Andreyev currently services as the Executive Vice President of the New Jersey State Policemen's Benevolent Association, representing more than

9

33,000 active law enforcement officers throughout the state.  During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service.  Officer Andreyev has counseled many other officers who have been the target of violent threats on ways to protect themselves and their family members from harm. whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

24.     Plaintiff Officer WILLIAM SULLIVAN is an 18-year veteran of the New Jersey Department of Corrections.  Since 2020, Officer Sullivan has served as the President of New Jersey PBA Local 105, the labor union representing thousands of correctional police officers from the New Jersey Department of Corrections, the Juvenile Justice Commission, and State Parole.  During the course of his law enforcement career, he has received numerous threats of violence directed at him and his family as a result of his public service.  Inmates incarcerated within New Jersey's state prisons frequently attempt to discover the protected information of correctional officers working in their facility.  These attempts and the risks posed by such information being accessible on the Internet is a frequent topic of discussion and concern among correctional officers and their family members.  Officer Sullivan has counseled many officers whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

**Plaintiff Atlas and its Assignors**

25.     Plaintiff ATLAS DATA PRIVACY CORPORATION is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

26.     As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 19,757 individuals who are all "covered persons" under Daniel's Law (together, the "Covered Persons"), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors.

27.     The Covered Persons include individuals who reside, work or had previously resided or worked in New Jersey, and qualify as "covered persons" as that term is defined under Daniel's Law, each of whom have claims against Defendants for failing to comply with Daniel's Law.

28.     As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or re-disclosing on the Internet or otherwise making available their protected information on one or more of Defendants' websites or through other methods of disclosure.

29.     Defendants have not complied with the law by ceasing the disclosure or re-disclosure on the Internet or the otherwise making available of protected information as required under Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs) as required by the law.

30.     In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas.

31.     Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other covered persons.  Atlas works with and provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New

11

Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, was to increase the safety and well-being of their members and associated households by helping those members to understand and assert the rights provided to them by the law.

32.     Upon signing up for Atlas, a law enforcement officer or other Covered Person is asked a series of questions to collect required personal information and qualify their eligibility as a covered person under Daniel's Law.  Once eligibility is confirmed, they are shown a page explaining how the Atlas platform works:

## How Atlas Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your home address or phone number. Atlas provides you with tools and services to help make the process more efficient.

1  **We identify** data brokers that may be disclosing your personal information. As of January 2024, our system tracks over 1,000 data brokers who operate in the United States.

2  **You select** the data brokers to whom you want to send takedown notices. We have lists of data brokers that we recommend, in order to make the selection process easier and more efficient. Alternatively, you can select recipients individually.

3  **You review** takedown notice templates. AtlasMail provides you with templates for takedown notice emails.

4  **You send** takedown notices. Your Atlas service includes an AtlasMail email address. You can use this email address to send takedown notices. More information about AtlasMail will be on the next screen.

**Back**                                                    **Next**

33.     AtlasMail is an email service operated by Atlas.  Upon signing up with Atlas, each law enforcement officer or other Covered Person receives their own AtlasMail account, with a

unique inbox address (e.g. john.doe23@atlasmail.com) for their personal use.  A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:



34.     Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of Atlas as a platform and AtlasMail as an email service, the law enforcement officer or other Covered Person is then presented with a page on which they can review their home addresses and unpublished home telephone numbers, a takedown notice template, and a recommended list of data brokers to send notices to.  On this page the law enforcement officer or other Covered Person can choose whether or not to send takedown notices.  If they choose not to send takedown notices to the recommended list, they can select

13

individual recipients at a later page (as shown in the example copied below).  Here, each of the

Individual Plaintiffs and Covered Persons sent Defendants a takedown notice.



35.     Any reply or response back from a data broker to the law enforcement officer or

other Covered Person is received and displayed in their AtlasMail inbox.  AtlasMail is a fully

featured email service provider, and its users can reply, forward, or use their AtlasMail account as

they would any other email account:





36.     With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law for those Covered Persons.  This lawsuit seeks to protect their privacy without unnecessarily putting those individuals in the spotlight.  Atlas will work with the Court and Defendants to implement a protective order to then provide Defendants with the assignments and other information for each of the Covered Persons.

**Defendants**

37.     Defendant First American Financial Corporation is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

16

38.     Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due to what appears to be intentional efforts by data brokers to conceal the specific entities involved and responsible for the disclosure of data and information, and individuals responsible for Defendants failures to comply with the law.

39.     Defendants offer and engage in the disclosure of data and information through one or more websites or applications, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey.  Those websites include:

firstam.com

datatree.com

40.     In accordance with Defendants' business model, visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished home telephone number of the Individual Plaintiffs and Covered Persons).  The following is a redacted example of the detailed information provided by Defendants,[8] in violation of Daniel's Law:

---

[8] Consistent with the mandate of Daniel's Law and the public policy considerations underpinning Rule 1:38-7, personal information in the search results has been redacted from the exemplar screenshots included herein.

17



41.     Daniel's Law was passed to protect those who serve from the disclosure of this protected information by such services, which disclose such information of the Individual Plaintiffs and Covered Persons for their own commercial interests, without sufficient regard to the risks and consequences imposed on individuals.

## JURISDICTION AND VENUE

42.     This Court has jurisdiction because the parties reside and/or conduct business in New Jersey, along with the Covered Persons, and the unlawful actions complained of herein occurred in New Jersey.

43.     Venue is proper pursuant to R. 4:3-2, in that Middlesex County is the county in which one or more of the parties and/or Covered Persons reside and/or conduct business.  In addition, many of the events giving rise to this action occurred in this County.

## FACTS COMMON TO ALL COUNTS

44.     As set forth above, New Jersey enacted Daniel's Law in November 2020 (P.L. 2020, c. 125 *codified as* N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1).

45.     Daniel's Law prohibits data brokers from disclosing or re-disclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

46.     Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or re-disclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

47.     This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

48.      Daniel's Law was amended in 2023, as P.L. 2023, c. 113.  The amendment was passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023.

49.     Certain provisions of the amended law, including changes to N.J.S.A. 56:8-166.1, went into effect immediately.

50.     As of July 20, 2023, Daniel's Law as codified in N.J.S.A. 56:8-166.1 provided:[9]

> 3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business,

---

[9] https://pub.njleg.state.nj.us/Bills/2022/PL23/113_.PDF

or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.

b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person, or the covered person's assignee, who may bring a civil action in the Superior Court.

c. The court shall award:

(1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;

(2) punitive damages upon proof of willful or reckless disregard of the law;

(3) reasonable attorney's fees and other litigation costs reasonably incurred; and

(4) any other preliminary and equitable relief as the court determines to be appropriate.

d. For the purposes of this section:

…"Disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

51. Starting on or about January 18, 2024, each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure requests (via email) in accordance with Daniel's Law, using AtlasMail.

52. For example, a true and correct copy of the email directly from Plaintiff Andreyev (with personal information redacted) is pasted here:

## Data Subject Request – Redaction/nondisclosure Request

**To**        dataprivacy@firstam.com
**From**     Peter Andreyev <█████████@atlasmail.com>
**Date**     Mon, Jan 22, 2024 3:14 PM UTC-0500

First American
January 22, 2024

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act").
Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), I hereby request
that you not disclose or re-disclose on the Internet or otherwise make available, the following protected
information:

Name: Peter Andreyev

Home Address: ████████████████████████████

Sincerely,
Peter Andreyev

53.       Defendants failed to cease the disclosure or re-disclosure on the Internet or the
otherwise making available of the protected information of the Individuals Plaintiffs and Covered
Persons within the time period required by Daniel's Law.

54.       Even as of the date of this filing, Defendants still refuse to comply with Daniel's
Law. Protected information of the Individual Plaintiffs and those Covered Persons who assigned
Atlas their Daniel's Law claims against Defendants remains available from Defendants using
Defendants' search tools or other means of disclosure.

55.       All of the Covered Persons who sent their nondisclosure requests to Defendants
(not including the Individual Plaintiffs) have assigned their claims against Defendants to Atlas.

56.       The Individual Plaintiffs and Atlas hereby assert claims against Defendants based
on their violation of Daniel's Law and continuing refusal to comply with that law.

## COUNT ONE

### (Daniel's Law)

57.     The allegations of the Complaint set forth above are included herein as if set forth at length.

58.     The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or re-disclosure on the Internet or wherever Defendants otherwise made it available.

59.     Defendants had an obligation under Daniel's Law to comply with the request within ten (10) business days.

60.     As of the date of this filing, Defendants still refuse to comply with Daniel's Law. The protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and the Covered Persons remains "available or viewable within a searchable list or database" or otherwise made available.

61.     Defendants did not cease the disclosure or re-disclosure on the Internet or the otherwise making available of information as required under Daniel's Law, and their failure in doing so each constitute a separate violation under the law.

62.     As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request all available relief.

63.     As of the date of this filing, Defendants still refuse to comply with Daniel's Law. The protected information of the Individual Plaintiffs and the Covered Persons remains disclosed or otherwise made available despite proper requests for nondisclosure in violation of Daniel's Law. As such, Plaintiffs request that the Court enter all appropriate legal and equitable relief.

WHEREFORE, Plaintiffs request that Judgment be entered against Defendants as follows:

A. Ordering that Defendants immediately comply with Daniel's Law, and cease the disclosure of the Individuals Plaintiffs' and the Covered Persons' names, home addresses, and unpublished home telephone numbers wherever disclosed or re-disclosed on the Internet or otherwise made available;

B. Awarding actual damages, not less than liquidated damages under Daniel's Law, at "$1,000 for each violation";

C. Awarding an additional amount in punitive damages, to be determined by the Court, for "willful noncompliance" as allowed under Daniel's Law;

D. Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

E. Ordering injunctive relief requiring that Defendants comply with Daniel's Law, and remove the Individual Plaintiffs' and the Covered Persons' protected information wherever disclosed;

F. Entering equitable or other permanent injunctive relief requiring Defendants to comply with Daniel's law, including the appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law; and

G. Awarding such other and further relief against Defendants as the Court deems equitable and just.

Respectfully Submitted,

**GENOVA BURNS LLC**

Dated: February 9, 2024       By: */s/ Rajiv D. Parikh* _____

       Rajiv D. Parikh
       Kathleen Barnett Einhorn
       494 Broad Street
       Newark, New Jersey 07102
       Tel: (973) 533-0777
       *Attorneys for Plaintiffs*

       **MORGAN & MORGAN COMPLEX LITIGATION GROUP**
       John A. Yanchunis
       Ryan J. McGee
       201 North Franklin Street, 7th Floor
       Tampa, FL 33602
       Tel.: (813) 223-5505
       jyanchunis@ForThePeople.com
       rmcgee@ForThePeople.com

       (*pro hac vice motions to be filed*)

## DESIGNATION OF TRIAL COUNSEL

The Court is advised that pursuant to New Jersey Court Rules 4:5-1(c) and 4:25-4, Rajiv D. Parikh, Esq. is hereby designated as trial counsel for Plaintiffs in this matter.

       **GENOVA BURNS LLC**

Dated: February 9, 2024       By: */s/ Rajiv D. Parikh* _____

       Rajiv D. Parikh, Esq.

**<u>CERTIFICATION PURSUANT TO RULE 4:5-1</u>**

Pursuant to <u>R.</u> 4:5-1, it is hereby stated that the matter in controversy between the parties hereto is not the subject of any other action pending in any other Court or of a pending arbitration proceeding to the best of my knowledge and belief.  Also, to the best of my knowledge and belief, no other action or arbitration proceeding between the parties hereto is contemplated.  Further, other than the parties set forth in this pleading and the previous pleadings, if any, at the present time we know of no other parties that should be joined in the within action.

**GENOVA BURNS LLC**

Dated: February 9, 2024                    By: *<u>/s/ Rajiv D. Parikh</u>*

Rajiv D. Parikh, Esq.

**<u>CERTIFICATION PURSUANT TO RULE 1:38-7(b)</u>**

Pursuant to <u>Rule</u> 1:38-7(b), it is hereby stated that all confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future.

**GENOVA BURNS LLC**

Dated: February 9, 2024                    By: *<u>/s/ Rajiv D. Parikh</u>*

Rajiv D. Parikh, Esq.

# Civil Case Information Statement

## Case Details: MIDDLESEX | Civil Part Docket# L-000915-24

**Case Caption:** ATLAS DATA PRIVACY C ORPORATIO  VS
FIRST AMERICAN

**Case Initiation Date:** 02/09/2024

**Attorney Name:** RAJIV D PARIKH

**Firm Name:** GENOVA BURNS LLC

**Address:** 494 BROAD ST 6TH FL

NEWARK NJ 07102

**Phone:** 9735330777

**Name of Party:** PLAINTIFF : ATLAS DATA PRIVACY
CORPORATION

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** OTHER Daniel's Law

**Document Type:** Complaint

**Jury Demand:** NONE

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: ATLAS DATA PRIVACY CORPORATION?** NO

**Are sexual abuse claims alleged by: JANE DOE 1?** NO

**Are sexual abuse claims alleged by: JANE DOE 2?** NO

**Are sexual abuse claims alleged by: EDWIN MALDONADO?** NO

**Are sexual abuse claims alleged by: SCOTT MALONEY?** NO

**Are sexual abuse claims alleged by: JUSTYNA MALONEY?** NO

**Are sexual abuse claims alleged by: PATRICK COLLIGAN?** NO

**Are sexual abuse claims alleged by: PETER ANDREYEV?** NO

**Are sexual abuse claims alleged by: WILLIAM SULLIVAN?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
      **If yes, please identify the requested accommodation:**


**Will an interpreter be needed?** NO
      **If yes, for what language:**


**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO
**Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

02/09/2024
Dated

/s/ RAJIV D PARIKH
Signed